**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

NIKITAS SMARAGDAS,                :
                                  :   Civil Action No. 04-1626 (FLW)
          Petitioner,             :
                                  :
     v.                           :   **OPINION**
                                  :
C.J. DeROSA, et al.,              :
                                  :
          Respondents.            :

**APPEARANCES**:

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondent |
| Nikitas Smaragdas | Irene E. Dowdy, Esquire |
| F.C.I. Allenwood | Asst. U.S. Attorney |
| P.O. Box 1000 | 402 East State Street |
| White Deer, PA 17887 | Suite 430 |
| | Trenton, NJ 08608 |

**WOLFSON**, District Judge

   Petitioner Nikitas Smaragdas, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, when he filed this Petition, has submitted a Petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
   (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

a prison disciplinary proceeding.  The respondents are the Bureau of Prisons and Warden C.J. DeRosa.

For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND[2]

On October 14, 1994, Petitioner was sentenced in the United States District Court for the Eastern District of New York to a 120-month term of imprisonment and to a consecutive term of imprisonment of 60 months.  At the time of the events complained of here, Petitioner was confined at the Federal Correctional Institution at Fort Dix, New Jersey.

On September 5, 2003, a work detail of inmates was installing metal screens on the first floor of Unit 5702 at FCI Fort Dix.  General Maintenance Supervisor J. Schanil reported that at about 9:45 a.m. on that date, while he was supervising the work detail, he was standing next to the windows, out of Petitioner's view, when he heard Petitioner say to the inmates on the work detail, "You should not do any security work in the institution, that's not an inmate job."  Supervisor Schanil wrote up Incident Report 1134119, charging Petitioner with "Interfering With Staff in Performance of Duties [Code 298], Most Like Encouraging Others to Refuse to Work, or to Participate in a Work

---

[2] Except as otherwise noted, the material facts are not in dispute.

Stoppage [Code 213]." The Incident Report was delivered to Petitioner on that date. Petitioner noted an error in Box 11, describing the date staff became aware of the incident. The Incident Report was re-written to correct that error. Although the re-written Incident Report reflects that a copy was delivered to Petitioner on September 5, 2003, Petitioner states that he did not receive a copy of the re-written report until after he returned to the Unit following the completion of his sanction of 30 days in disciplinary segregation.

On September 8, 2003, an initial hearing was conducted by the Unit Disciplinary Committee ("UDC"). Petitioner told the UDC that he had not made the statement reported by Supervisor Schanil, but that he had asked an inmate on the work detail "Is that security work you are doing?" Here, Petitioner characterizes his question as, "Isn't this security work you are doing? Are you guys allowed (meaning trusted) to do security work?" (Petition Att. at 2.) At the conclusion of the hearing before the UDC, the Incident Report was forwarded to the Discipline Hearing Officer ("DHO") for further proceedings.

In the interim, Lt. Lehmacher continued his investigation into the Incident Report. He reported as follows:

> On 9/19/03 I interviewed the following inmates in references to the incident with inmate Smaragdas. All inmates were asked if they had heard Smaragdas tell them to stop working or that they were not supposed to do this work because it is security work. Burnett ... stated that he was in class at the time and heard about

3

> it after he returned to work.  Carlin ... stated that
> he heard some inmates asking what were they doing but
> did not hear anybody tell them not to work.  Chicchi
> ... stated that he heard inmates yelling that this is
> security work and that you don't have to do it, he also
> said that all of the other units that they have worked
> at the inmates have said the same thing.  Ibrahim ...
> also stated that other inmates were saying that it was
> security work and they don't have to.  Meeker ...
> stated that he wasn't paying any attention to what was
> being said, he just minds his own business and does
> what he has to do.
>
> Campbell ... stated that he was away from the building
> at the time hooking up extension cords and entered the
> building after the incident had happened.

(Respondents' Ex. 1c.)  It does not appear that Petitioner received a copy of this investigation report.

On September 29, 2003, a hearing was held before DHO Steven T. Morton.  Petitioner admitted that he had asked an inmate if he was doing security work.  Petitioner stated that Supervisor Schanil could not have heard Petitioner because he was fifty feet away from Petitioner working with a hammer drill.  Petitioner states that he requested Counselor Wiget to be a witness as to the distance between Petitioner and Supervisor Schanil, but he refused to be a witness.  The documents provided by Petitioner include an "Inmate Request to Staff" in which Counselor Wiget states "I was not a witness to this incident."  Petitioner also states that he requested that inmates on the work detail be called as witnesses, but he could not give their names.  The DHO Report reflects that Petitioner did not request any witnesses. (Respondents' Ex. 1d.)

4

The DHO found that Petitioner had committed a violation of Code 213 Encouraging Others to Refuse to Work or to Participate in a Work Stoppage.  The DHO credited the evidence provided by the reporting employee.  The DHO imposed disciplinary sanctions consisting of 30 day disciplinary segregation, 27 days loss of good conduct time, and he recommended a disciplinary transfer.

Petitioner received the DHO Report on November 20, 2003, after he returned to the Unit from disciplinary segregation.  He had 20 days to file an administrative appeal.  On December 4, 2003, Petitioner sent a letter to the Northeast Regional Office requesting an extension of time to appeal until December 21, 2003.  Petitioner stated that he needed to locate the members of the work crew.  Petitioner received no response to this request.  On December 11, 2003, one day after the 20-day deadline, he signed a Regional Administrative Remedy Appeal, which the Northeast Regional Office received on December 17, 2003.  The appeal was rejected as untimely.

> YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP-10) MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM RESPONSE OR RECEIPT OF THE DHO REPORT THIS TIME INCLUDES MAIL TIME.
> ...
> IF YOU RECEIVED REPORT ON 11/20/03 AS STATED ON REPORT, YOUR APPEAL WAS DUE TO THIS OFFICE BY 12/10/03.

(Pet. Ex. E.)  On January 28, 2004, the BOP's Central Office received Petitioner's Central Office Administrative Remedy Appeal.  On February 5, 2004, the Central Office Administrative

Remedy Coordinator rejected the appeal, concurring with the Regional Office's conclusion that the appeal was untimely.  (Pet. Exs. F, G.)

Here, Petitioner asks this Court for an Order restoring his 27 days good time credits,[3] or vacating the BOP's rejection of his administrative appeal and requiring it to be considered on the merits.  Respondents contend that Petitioner has procedurally defaulted in his pursuit of administrative remedies, barring this Court's review of the merits, and, in the alternative, that the Petition is meritless.

## II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

---

[3] This Court has previously denied Petitioner's challenge to his disciplinary transfer as moot.  See Order, Docket Entry No. 10.

6

519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[4]  See, e.g., Callwood v.

---

[4] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request, or who wishes to challenge a DHO Report, may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response or of the date the DHO Report was delivered to the prisoner.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, because there is no need for an administrative

8

agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).

Where exhaustion is required, a prisoner's procedural default in pursuing administrative remedies bars judicial review of a subsequent habeas corpus petition, absent the prisoner's demonstration of cause and prejudice for the default.  Moscato, 98 F.3d at 760-62, citing Davis v. United States, 411 U.S. 233 (1973).

> The Supreme Court has delineated what constitutes "cause for the procedural default: the petitioner must "show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the ... procedural rule." Murray v. Carrier, 477 U.S. 478, 488. ... With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 494 ... (quoting United States v. Frady, 456 U.S. 152, 170 ...)). this standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial." Id.

Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Here, Petitioner can establish neither cause nor prejudice. In his Response (Docket Entry No. 9) to the Answer, Petitioner asserts that he did exhaust his administrative remedies, and that

9

the Regional Office should have granted him an extension of time. Although Petitioner, as he claims, may not have been able to conduct an investigation to determine the members of the work crew while he was confined in disciplinary segregation, he fails to describe what efforts he made, on what dates, to determine the members of the work crew, what information he obtained on what dates, and what took so long to determine their identities. Moreover, Petitioner waited until 14 days into his 20-day deadline even to send the Regional Office a request for an extension of time.  Petitioner has failed to establish "cause" for his procedural default.

With respect to the question of prejudice, Petitioner cannot establish that the alleged errors deprived him of fundamental fairness in the disciplinary hearing.  Wiget has stated that he was not a witness to the incident.  According to Petitioner, who has not provided to this Court or in the administrative appeals process any affidavits, the members of the work crew would have testified as follows:

> Ibrahim says he told the S.I.S. investigator that he and the petitioner only had a brief, friendly conversation.  Inmate Chicci told the S.I.S. that there were catcalls of sorts from the <u>upstairs</u> windows. Inmate Campbell says he told the S.I.S. that he heard nothing coming from petitioner when he was with Mr. Schanil footing the ladder and when he saw petitioner getting dressed, he thought Mr. Schanil was recruiting petitioner to do some work with the heavy screens. Each and all told the S.I.S. that they felt no intimidation or incitement from the whole situation, including the catcalls from above.

10

(Pet. at 5.)  None of these statements amounts to a corroboration of Petitioner's characterization of his remarks or to a refutation of Supervisor Schanil's statement.  Finally, the exact character of the statement, whether question or affirmative statement, is not dispositive of whether Petitioner committed the alleged violation.  Raising the question with a member of the work crew whether he was doing prohibited security work, in any form, constitutes some evidence supporting the charge of violating Code 213, Encouraging others not to work or to participate in a work stoppage.  Thus, any deficiency with respect to the calling of witnesses did not prejudice Petitioner sufficiently to excuse his failure to exhaust his administrative remedies.  Petitioner's claim is procedurally defaulted.

B.    The Good Conduct Time Credits

Even if Petitioner had not procedurally defaulted his claims, they would not merit relief.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed.

11

... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." <u>Wolff</u>, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, <u>Wolff</u>, 418 U.S. at 570-71, excluding "only those

---

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. <u>See</u> 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

[prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[6] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that

---

[6] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[7]

Petitioner does not dispute that he waived the assistance of a staff member.  There is a dispute as to whether Petitioner requested and was refused the opportunity to call witnesses.  To the extent he was wrongly refused the opportunity to call witnesses, Petitioner suffered no harm.  The characterization Petitioner has provided to this Court as to what the prisoners would have said indicates that the other prisoners would not have provided testimony directly supportive of Petitioner's position. Accordingly, there was no due process violation.

---

[7] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

IV.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


                                               S/Freda L. Wolfson
                                               Freda L. Wolfson
                                               United States District Judge

Dated: February 27, 2006